```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08CR496 CEJ |
| ) | (FRB) |
| JAMES HAROLD ELLEGOOD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM, ORDER,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant James Harold Ellegood filed several pretrial motions which are addressed herein.

1. <u>Motion For Bill Of Particulars</u> (Docket No. 70)

The purpose of a bill of particulars is to apprise the defendant of the nature of the charges against him and to prevent undue surprise at trial. <u>United States v. Miller</u>, 543 F.2d 1221, 1224 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1108 (1977). However, a bill of particulars is not a proper vehicle by which to seek to obtain names of witnesses, evidentiary detail or the government's theory of the case. <u>United States v. Largent</u>, 545 F.2d 1039 (6th Cir. 1976); <u>United States v. Matlock</u>, 675 F.2d 981, 986 (8th Cir. 1982). The indictment in this case is sufficiently precise that it informs the defendant of the charge against him to enable him to prepare a defense, to avoid the danger of surprise at trial, and to

plead his acquittal or conviction as a bar to further prosecution on the same offense. Wong Tai v. United States, 273 U.S. 77 (1927).

The defendant in his motion notes that several of the allegations in the indictment refer to the "defendants" collectively as committing the offenses alleged. He requests that the government be required to state whether he is the (or a) defendant referred to in these allegations. He further avers that without such information he will be unable to assist in his defense and be informed of the charges against him.

The indictment sets out in detail the offenses alleged. Count 1 of the indictment alleges that each of the defendants conspired and agreed with each other to commit various acts. Each of the counts also alleges that the violation alleged were committed in violation of a cited substantive statute and in violation of Section 2, Title 18, United States Code. Thus, a fair reading of the indictment would show that each of the defendants is alleged to have committed the offenses alleged, either individually, or by conspiring with, or aiding and abetting, other defendants in so doing. Thus the indictment gives fair and ample notice to the defendant of the charges made against him.

In his motion the defendant also requests that the government be required to give him notice "as to what proof the government has that the defendant 'knew' or did things 'knowingly'." This is precisely the kind of evidentiary detail that is not properly the subject of a bill of particulars.

Further, in its response to the defendant's motion the government notes that substantial discovery has been provided to the defendant in the form of written documents underlying the various charges. Such disclosure also obviates the need for a bill of particulars. <u>United States v. Giese</u>, 597 F.2d 1170, 1180 (9th Cir. 1979); <u>United States v. Kilroy</u>, 523 F.Supp. 206, 211 (D.Wis. 1981).

Therefore, the defendant's motion should be denied.

2. <u>Motion To Suppress Statement</u> (Docket No. 68)

Testimony and evidence was adduced on the defendant's motion at the hearing before the undersigned on November 13, 2008. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

### Findings of Fact

On August 29, 2007, Stacey L. Jordan a Special Agent of the U.S. Department of Health and Human Services, Officer of Inspector General (HHS/OIG), applied for and obtained a warrant to search premises located at 419 South 5th Street, DeSoto, Missouri. The premises were the home of Dr. James H. Ellegood and his wife, Wynsleen K. Ellegood. The residence also served as the office out of which Dr. Ellegood conducted the business of Physician Home Services, Inc., (PHS) which operated as a home health care provider. The warrant authorized a search of the premises for, and seizure of, records and other items related to the operation of the business of PHS. (<u>See</u> Government's Exhibit 2).

On August 30, 2007, Agent Jordan went to the DeSoto, Missouri, area for the purpose of executing the search warrant. She enlisted the assistance of the Jefferson County, Missouri, Sheriff's Office in executing the search warrant. Agent Jordan was aware that Dr. James Ellegood had a previous federal felony conviction for distribution of cocaine and anabolic steroids. She also had received information that Dr. Ellegood's son was an unlawful user of controlled substances. For these reasons it was suggested by Jefferson County Officials that it would be appropriate for Officers of the Jefferson County Sheriff's Office Narcotics Unit to participate in the search warrant execution.

The Narcotics Unit intended to execute several search warrants on August 30, 2007. It was standard procedure for the unit that when executing warrants that the officers would wear tactical clothing and be armed with weapons. Because some of the officers were engaged in ongoing undercover operations, those officers also wore coverings over their faces in order to prevent them from later being recognized as police officers by subjects of undercover investigations.

At approximately 7:00 a.m. on August 30, 2007, Agent Jordan, other agents from HHS/OIG and the officers of the narcotics unit went to 419 South 5th Street for the purpose of executing the search warrant. One of the narcotics unit officers knocked on the door to the residence and Dr. Ellegood answered. Dr. Ellegood asked the officer why they were at the residence and he was informed that the officers had a warrant to search the premises.

Dr. Ellegood and his wife stepped out of the residence and a narcotics unit officer escorted them to a sidewalk area in front of the residence. A number of the narcotics unit officers and agents of HHS/OIG, including Agent Jordan, then went into the residence and looked about to see if there were any other persons, or any visible weapons, inside the residence. None were found and the officers then left the residence. The narcotics unit officers then all left the area to go about their other business of the day. A uniformed DeSoto, Missouri, police officer and marked police vehicle remained in the area. This initial entry and "sweep" of the residence was very brief, lasting two or three minutes.

Upon completion of the initial sweep Agent Jordan went to the sidewalk area where Dr. and Mrs. Ellegood were standing. She identified herself to them and displayed her credentials. She then explained why the agents were there. She told them what items the agents were looking for and what they would be seizing. She also gave Dr. Ellegood a copy of a "probable cause" statement which was the probable cause statement that was a part of the search warrant (See Government's Exhibit 2 - Attachment B). She told the Ellegoods that they could stay at the residence while the search was being conducted or that they could leave if they chose to do so. She also told them that if they chose to leave the area they would not be permitted to reenter the residence until the search was completed. Both Dr. and Mrs. Ellegood elected to remain at the residence while the search was conducted, with Dr. Ellegood stating, "I'm not leaving my house while you people are in there."

Agent Jordan asked both Dr. Ellegood and Wynsleen Ellegood if they would agree to be interviewed by the agents and they said that they would not.  Agent Jordan therefore did not attempt to question either of them nor did any other law enforcement official.  Dr. Ellegood asked if he could contact a lawyer and was told that he was free to do so.

      Dr. and Mrs. Ellegood then went into the residence and were escorted to the living room area.  They were told to remain in the living room area while the search was being conducted.  They were told that if for any reason they wished to move from the living room area for some reason they would be permitted to do so.

      Agent Mike Grasso of HHS/OIG was assigned to watch over and assist the Ellegoods with any needs while the search was being conducted.  He stood near the living room area where they were located.  Agent Grasso did not question the Ellegoods, however, he was able to hear some of the conversations between the Ellegoods and others.  At one point Agent Grasso heard Dr. Ellegood make several statements to Wynsleen Ellegood that he believed were pertinent.  He made written notes of the statements and later prepared a report setting out what he had heard.  In his report Agent Grasso noted that statements were made on August 30, 2007, at approximately 7:21 a.m.  He quoted the statements in his report as follows: "I over-billed Medicare because I wasn't there with the nurse practitioners."  "This is a criminal offense.  Over-billing Medicare is a criminal offense."  (<u>See</u> Government's Exhibit 1). Dr. Ellegood appeared to be holding in his hand a copy of the

probable cause statement provided to him by Agent Jordan at the time these statements were made. Immediately after Dr. Ellegood made these statements Wynsleen Ellegood told Dr. Ellegood to "be quiet" and to not say anything further. During the search the agents looked for and examined numerous documents which were located in various parts of the residence. The search was concluded at approximately 2:00 or 2:30 p.m. The Ellegoods remained at the residence during the entire time. They were not handcuffed or physically restrained in any way either before, during or after the search. They were permitted to go into the bathroom and kitchen areas when they asked. Dr. Ellegood was allowed to use his telephone. He contacted several employees and told them not to come to the office that day. He appeared at times to be conducting business with patients over the telephone. At one point he asked for a particular patient file to be retrieved and brought to him in order that he could consult with the patient and that was done. Dr. Ellegood told the officers that he needed to take his medications and he was permitted to do so. At one point Dr. Ellegood appeared to be speaking on the telephone with an attorney and inquiring about obtaining an attorney to represent him.[1] Dr. Ellegood appeared calm throughout the course of the day. From time to time he engaged in casual conversation and chit chat

---

[1] At some point a man arrived outside of the residence and identified himself to Agent Jordan as an attorney. The man was told that he could not enter the residence while the search was being conducted. The man stood outside the residence for most of the remainder of the time while the search was conducted.

with Agent Grasso about Dr. Ellegood's dog and his collection of baseball memorabilia.

After the search was completed all of the law enforcement officers left the residence. Neither Dr. Ellegood or Wynsleen Ellegood were arrested and they were left at the residence upon completion of the search.

Discussion

As grounds to suppress the statements made by him, and specifically the statements noted in Agent Grasso's report, the defendant avers in his motion that the statements were not voluntary in that "defendant was not afforded counsel prior to or during interrogation; the length and nature of defendant's custody, and the duration and nature of defendant's interrogation and the conditions under which it was conducted, were inherently coercive as applied to a person of defendant's age, education, background and physical and mental condition at the time such interrogation occurred; and said statement was made without the defendant first being fully advised of certain constitutional rights, under the Fifth Amendment of the United States Constitution." The claims are without merit.

In Miranda v. Arizona, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one

will be appointed for him.  Id. at 478-79.  The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials.  Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial.  Id. at 479.

The proscriptions of Miranda apply only when the person questioned is "in custody" and subject to "interrogation" by law enforcement officials.  Illinois v. Perkins, 496 U.S. 292, 297 (1990).  A person is in custody within the meaning of Miranda when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarthy, 468 U.S. 420, 440 (1984); California v. Beheler, 436 U.S. 1121, 1125 (1983).  "Interrogation" within the meaning of Miranda is "express questioning or its functional equivalent."  Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  The "functional equivalent" of interrogation are "words or actions on the part of [law enforcement officers] . . . that the [law enforcement officers] should know are reasonably likely to elicit an incriminating response from the suspect."  Id. at 301.

The statements made by the defendant here were not the product of any interrogation by any law enforcement officer.  Agent Jordan asked the defendant shortly after the search was begun if he would agree to an interview and the defendant declined.  Agent Jordan did not question the defendant further, nor did any other

law enforcement officer.  The statements made by the defendant were volunteered by him and were overheard by Agent Grasso as he stood nearby.  Agent Grasso made note of the defendant's comments but did not follow-up with any questions to the defendant.  Such spontaneous volunteered statements, not made in response to questioning, are admissible even in the absence of <u>Miranda</u> warnings.  <u>United States v. Hawkins</u>, 102 F.3d 973, 975 (8th Cir. 1996), <u>cert.</u> <u>denied</u>, 520 U.S. 1179 (1997); <u>United States v. McCoy</u>, 200 F.3d 582, 584 (8th Cir. 2000).  Further, providing the defendant a copy of the probable cause statement which was submitted with the warrant, which set out the nature of the offenses being investigated and the reasons for believing that evidence of those offenses could be found in the residence does not amount to the functional equivalent of interrogation.  <u>United States v. Wipf</u>, 397 F.3d 677, 685 (8th Cir. 2005); <u>Easley v. Frey</u>, 433 F.3d 969, 973-74 (7th Cir. 2006).

Nor was the defendant "in custody" within the meaning of <u>Miranda</u> at the time the statements were made.  In determining whether a person was in custody at the time of questioning the court must examine the objective circumstances surrounding the interrogation, <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994), and to determine from those circumstances "how a reasonable (person) in the suspect's position would have understood his situation."  <u>Berkemer v. McCarthy</u>, 468 U.S. at 442.  <u>Miranda</u> does not apply if the person is not in custody, even if the person is suspected of criminal activity or is a focus of the investigation.

Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Beckwith v. United States, 425 U.S. 341, 345 (1976). The defendant was told at the beginning of the search that he was not required to remain at the residence, but chose to do so, even though told the he would be required to remain at the residence until the search was completed if he chose to remain. The defendant was not handcuffed or otherwise restrained. He was allowed to move about the residence if he needed to do so. He was allowed the use of a telephone throughout the period of the search. Although weapons were initially displayed by the officers at the beginning of the search, none were being flourished by the officers during the remainder of the search. After the search was completed the agents and officers left the residence. Neither the defendant or his wife were ever placed under arrest before, during or after the search was completed. All of these circumstances demonstrate that the defendant was not "in custody" at the time he volunteered the statements at issue. United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

The defendant's statements were voluntary. In considering whether a statement was voluntary, the determinative question is whether the statement was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired. Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988)(citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)). In making this determination, courts look at the totality of the

circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991). "Coercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary'". Colorado v. Connelly, 479 U.S. 157, 167 (1986). "Absent police conduct causally related to the [statement], there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 164. At no time prior to the defendant's statements did the officers engage in any conduct that was so coercive as to overcome the defendant's will to resist efforts by the officers to obtain a statement from him. He in fact declined their invitation to be interviewed and the matter was not further pursued.

## Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Statement should be denied.


According,

**IT IS HEREBY ORDERED** that defendant's Motion For Bill Of Particulars (Docket No. 70) is denied.

**IT IS HEREBY RECOMMENDED** that the defendant's Motion To Suppress Statement (Docket No 68) be denied.

The parties are advised that they have to and including **February 9, 2009,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

　　　　　　　　　　　　　　　　/s/ Frederick R. Buckles
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2009.